ANDREW R. WATLAND v. MYRTLE K. HURLEY

183 So. 255.
Opinion Filed June 22, 1938.
Rehearing Denied September 21, 1938.

*Frank M. Harris* and *Erle B. Askew,* for Appellant;

*Burton G. Henson, O. M. Bowen, McKinney Barton, Bussey, Mann & Barton* and *J. Velma Keen,* for Appellee.

TERRELL, J.—The Appellant, Andrew R. Watland, filed his amended petition in the probate court of Pinellas County in May, 1936, praying that Myrtle K. Hurley, Appellee, be removed and discharged as guardian of the persons and property of Frances Katheryn Watland, the natural daughter of Appellant and Bernice Loreen Watland, an adopted daughter, both minors; that the Court appoint Eunice M. Brin or some other fit and suitable person as guardian of the persons and property of said minors and that an accounting be required of Myrtle K. Hurley for such part of their estate as may be found in her hands.

To the amended petition so exhibited, Appellee filed her answer in which was incorporated a motion to dismiss.

The answer traversed the material allegations of the amended petition, testimony was taken and on final hearing, the probate court was in all respects affirmed. The cause is here for review on appeal from the decree of the Circuit Court affirming the final decree of the probate court.

Appellant contends that the judgment below should be reversed because it was rendered on the theory that Watland was incompetent at the time this proceeding was brought while the main question before the Court was that of the fitness or not of Appellee to be guardian for his minor children, that Appellee was appointed guardian of said minor children without notice to Appellant, that she is unfit to be their guardian and has rendered herself distasteful to him.

There is much in the record about the sanity and the insanity of Appellant but it is perfectly clear that at the time this proceeding was instituted, he had been adjudicated sane and was so considered by the probate court. It is also clear that both the probate court and the Circuit Court properly sensed the situation with which they were confronted and recognized that they were called on to adjudicate the question of whether or not Appellee should be adjudged as an improper person to act as such and be removed as guardian of the persons and property of the minor children of Appellant.

The petition alleges and the answer admits that Appellant is the father of the two minor children named therein and that their mother died December 31, 1934, that prior to the death of the Mother, the Father was adjudged insane and incompetent by the probate court of Volusia County, Florida, and John L. Brin was appointed and qualified as his guardian, that on April 16, 1935, Appellant was by a competent court adjudicated sane and mentally fit,.

that during his incompetency his guardian, John L. Brin, petitioned the probate court of Pinellas County for the appointment of a guardian for his minor children and that on January 28, 1935, Appellee was duly appointed as guardian of their persons and estate, that at the time of her appointment, Appellee had the custody and control of said minors, that they had an estate of approximately $235,000.00 settled on them by their Mother's will from which they had an income ample for their support.

The controverted issues raised by the petition and answer on which the testimony was taken were (1) That after her appointment as guardian of said minors, the attitude and conduct of Appellee toward Appellant was such that it alienated the affections of her wards for and turned them against their father, (2) The guardianship of Appellee was exercised in such a way as to be detrimental to the mental, physical, and spiritual welfare of said minors. (3) That Appellant's health having been restored, he was ready and willing to assume the duties and responsibilities of guardianship of his minor children though the petition asserts a willingness for the Court to name some other fit person to act in that capacity if the interest of the minors should require, (4) That Eunice M. Brin, wife of John L. Brin, was a blood relative of said minors, was a fit person to be designated as their guardian and had expressed a willingness to accept that responsibility.

To deny a parent the guardianship of a minor child or children is a harsh rule that should be exercised with great caution, but in all such controversies, and there have been many, the welfare of the child is the thing of primary concern, and being so, when this rises above the natural and equitable right of the parent, they may be deprived of their right of guardianship and the child placed absolutely or conditionally in the custody of a stranger. Witt, *et al.* v.

Burford, 84 Fla. 201, 93 So. 186; Hancock v. Dupree, 100 Fla. 617, 129 So. 822; Frazier v. Frazier, 109 Fla. 164, 147 So. 464.

The record shows conclusively that both the probate court and the Circuit Court adjudicated the question here raised with these considerations in mind and in so doing, resolved all the issues presented against the Appellant. There are some conflicts in the evidence but we find abundant support for the finding and judgment of the Court below. On the controlling considerations, there is little or no controversy.

It is shown without contradiction that Appellant and his wife through their joint effort accumulated a large estate in Wichita Falls, Texas, that when they moved to Florida in 1934, they mutually agreed to an equal division, each receiving about $235,000.00; that Appellee had worked for Appellant and his wife in Texas and was an intimate friend of Mrs. Watland, that when Mrs. Watland executed her will, she named Appellee and John L. Brin, her brother-in-law, as trustees to handle her estate. She also provided a trust fund of $25,000 for Appellee in addition to a house, board, clothing, medical attention, and $100 per month as co-trustee of her estate to look after her minor children. Paragraph five of her will shows how Mrs. Watland felt toward Appellee and is as follows:

"The above named Myrtle Kathryn Hurley has been a close friend of my family for a period of fifteen (15) years and has lived with my family for a period of approximately eight (8) years and has largely had charge of my said two daughters and their care, custody, and control and is devoted to them and interested in their welfare. On the other hand, my said two daughters are devoted to her. It is, therefore, my wish and my will that upon my decease the said Myrtle Kathryn Hurley shall actively aid my beloved

husband in the care, custody, control, education, and superintendence of my said two daughters, and from said trust estate shall receive her board, room, clothing, and medical attention, as necessary.

"In the event my beloved husband should predecease me, then I name, constitute, and appoint the said Myrtle Kathryn Hurley as guardians of the persons of my said two daughters with full power and authority usually pertaining to guardians, and in the event my said beloved husband, should at any time become incapacitated on account of illness to actively aid or direct in the care, custody, control, education, welfare and superintendence of my said two daughters, then it is my wish and my will that the said Myrtle Kathryn Hurley be appointed guardian of the persons of my said two daughters."

It is further shown that sometime in 1925, Appellant was afflicted with maniac depressive psychosis which comes and goes in cycles of irregular intervals and intensity, that it may come on at any time and that the victim is not so amenable to being influenced as the hysterical or the dementia praecox type of insanity, that Appellant has since had four attacks of this trouble from which he spent periods in the hospital at different places, that he was adjudicated sane after one of these attacks in April, 1935, and immediately took up his residence with Appellee and his children at St. Petersburg, where he remained happily until February, 1936, when he went to a "restorium," where he was residing when he brought this proceeding.

In addition to the terms of the will as here quoted, the evidence shows that Appellee was devoted to the minor children of Appellant and that they were devoted to her; that she (Appellee) had had much to do with their upbringing; had lived in the family for eight years, and had been a friend of the family much longer; that she had never

attempted to alienate them from their father; has not kept them away from him, but on the other hand, has insisted that he live with them. It is also shown that one of the minors has a mental affliction and that it was their Mother's desire that Appellee become responsible for their rearing and training, that Mrs. Brin lives and resides in the State of Minnesota, and is disliked by one of said minors.

While the record discloses that fundamentally the Appellant is a man of good character, his weakness and instability are also revealed. For instance, it is shown that within a comparatively short time after the division of his property with his wife, he had executed a half dozen or more wills, powers of attorney, and trusts with reference to it. His conduct toward his children and Appellee was childish and abnormal; besides there is ample other showing to convince the probate judge that he was not a suitable person to be the guardian of his children. He was subject at any time to have a recurrence of his old trouble and in fact, there is ample reason to question whether he completely recovered from the former ones. What is said in this opinion about Appellant's condition has little to do with the main question. Except for his unsupported assault on Appellee, it might as well be omitted.

We have read the cases and argument in support of Appellant's contention that he had no notice of Appellee's appointment as guardian of his minor children. It is sufficient reply to this contention to say that our statute does not require notice in such cases but if it did, Appellant's guardian was on notice of the appointment, and was authorized to represent him. There is no showing whatever that the appointment of Appellee as guardian was not in all respects regular and in compliance with law. She had been guardian for more than a year when this proceeding

was brought during the greater part of which Appellant had lived with her and his children.

As to the charge that Appellee became a trouble maker, alienated the affections of Appellant's wife, was guilty of abnormal conduct with her and the suggestion that she was possessed of a "homosexual instinct" there is not a shadow of proof in the record. In view of the fact that Appellee had lived in the home for eight years, had been an intimate of the family for fifteen years, had worked for Appellant for years, had been the confidant of his wife and his (Appellant's) employee, as was said by the probate court, we find no basis for this charge except in the fancy and imagination of Appellant. All the positive evidence shows that Appellee was a lady of high character, gave up a responsible position to assume the responsibility of guardian for Appellee's children, loved them and they in return loved her, that she was well qualified to be their guardian and was coming as near to taking the place of a Mother as a guardian could.

The evidence adduced is voluminous. We have made no attempt at more than a cursory review of it. Some of the salient points have not been touched. There is no question as to the controlling law of the case. From what has been said, it may be easily discerned that the probate court was confronted with a serious dilemma. On the showing detailed, should Appellee, shown to be a competent and well qualified guardian, regularly appointed and shown by the will of Appellant's wife to be her trusted friend and the one she desired above all others to become responsible for the guardianship and training of her children, be now displaced and Eunice M. Brin or some other person be appointed at the instance of the father, having been shown to be afflicted with a species of intermittent insanity that dethroned his reason and led him into vagaries and fancies

that for a portion if not all the time totally incapacitated him to be responsible for his children or the management of their estate?

Two courts below resolved this dilemma against the Appellant and we are pointed to no theory that would warrant us in overthrowing their decision. To do so would in effect set aside the will of the Mother on a mere collateral attack when no one, not even Appellant, has otherwise questioned its *bona fides* or legality, nor has he sustained a single ground on which he prays this Court to remove Appellee. It may be that Eunice M. Brin is well qualified to be guardian of Appellant's children but the facts are that she is a sister of Mrs. Watland, lives in the State of Minnesota, beyond the jurisdiction of this State, was passed over when Mrs. Watland made her will, and Appellee was preferred, is not in favor with one of the minors, and Appellee was named guardian in compliance with the terms of the will and on Mr. Brin's suggestion.

Another strong inducement supporting the probate judge's finding is that both of the minors are girls of tender years and one of them is shown to be afflicted with a psychic aberration, whether temporary or permanent, the record does not disclose, but to release them from the trusted friend and confidante of their mother who has known them from infancy and place them in the hands of another who is shown to be the resident of a foreign state would certainly not be conducive to their best interests.

The judgment below finds abundant support in the record and is accordingly affirmed.

Affirmed.

WHITFIELD, BROWN and CHAPMAN, J. J., concur.

BUFORD, J., dissents.